## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

DOYLE JAY MCDANIEL,

                 Plaintiff,

v.                                         CIVIL ACTION NO.   2:14-cv-28157

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                 Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Doyle Jay McDaniel's Complaint seeking review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"). (ECF No. 2.) By standing order filed in this case on November 16, 2014, this action was referred to United States Magistrate Judge Cheryl A. Eifert for total pretrial management and submission of proposed findings of fact and recommendations for disposition. (ECF No. 4.) On November 18, 2015, Magistrate Judge Eifert entered proposed findings of fact and recommendations for disposition (the "PF&R"), in which she recommends that this Court deny Plaintiff's request for judgment on the pleadings ("Plaintiff's Motion"), (ECF No. 12), grant Defendant's request for judgment on the pleadings ("Defendant's Motion"), (ECF No. 13), affirm the final decision of the Commissioner, and dismiss this case with prejudice. (ECF No. 15 at 1–2, 33–34.) Plaintiff filed timely objections to the PF&R on December 1, 2015, (ECF No. 16), and Defendant filed opposition briefing to the Objections on December 3, 2015, (ECF No. 17).

1

For the reasons provided herein, the Court **SUSTAINS IN PART** the Objections, (ECF No. 16), **DECLINES TO ADOPT** the PF&R, (ECF No. 15), **GRANTS** Plaintiff's Motion, (ECF No. 12), to the extent that Plaintiff requests remand of this case, **DENIES** Defendant's Motion, (ECF No. 13), **REVERSES** the final decision of the Commissioner, **REMANDS** this case for further proceedings pursuant to 42 U.S.C. § 405(g), and **DISMISSES** this action from the Court's docket.

## I.  Procedural Background

The facts concerning this matter are fully set forth in the PF&R and need not be repeated here at length. In short, Plaintiff filed applications for disability insurance benefits and supplemental social security income benefits on January 17, 2013, alleging disability as of April 2, 2011. (ECF No. 11-6 at 4–16.) The applications were initially denied on March 15, 2013, (ECF No. 11-3 at 2–65), and upon reconsideration on June 18, 2013, (*id.* at 20–39).

A hearing was held before Administrative Law Judge H. Munday (the "ALJ") on April 29, 2014. (ECF No. 11-2 at 26–48.) On June 9, 2014, the ALJ issued an unfavorable decision.[1] (*Id.* at 9–21.) The Appeals Council denied review of the ALJ's decision on September 19, 2014. (*Id.* at 2–7.) Thereafter, on November 14, 2014, Plaintiff filed the Complaint in this Court. (ECF No. 2.)

---

[1] The ALJ found at step one of the sequential evaluation process that Plaintiff "has not engaged in substantial gainful activity since April 2, 2011, the alleged onset date." (ECF No. 11-2 at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine, lumbar radiculopathy, sacroiliitis, spinal stenosis, status post spinal surgery, and osteoarthritis of the knees with associated anterior cruciate ligament (ACL) tear and torn meniscus." (*Id.*) At step three of the analysis, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 15.) The ALJ next found that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)," with certain listed limitations. (*Id.* at 15–19.) The ALJ also found that Plaintiff "is unable to perform any past relevant work." (*Id.* at 19.) Finally, at step five, the ALJ found that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id.* at 20–21.)

## II.  Standard of Review

### A.      Review of the PF&R

The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendations to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### B.      Review of the ALJ's Findings and Decision

"Under the Social Security Act, [a reviewing court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)); *see, e.g.*, 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (alteration in original) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should] not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

judgment for that of the Secretary." *Craig*, 76 F.3d at 589 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Plaintiff "bears the burden of proving that he is disabled within the meaning of the Social Security Act." *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5) and *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981)). "The term 'disability' means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a "five-step sequential evaluation process" to evaluate a disability claim.[2] 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "If [the adjudicator] can find that [a claimant is] disabled or not disabled at a step" in the sequential evaluation process, the adjudicator "make[s] [their]

---

[2] In *Hall v. Harris*, the Fourth Circuit provided the following description of the sequential evaluation analysis:

> Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job.

658 F.2d 260, 264–65 (4th Cir. 1981); *see also* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4) (providing the sequential evaluation analysis).

4

determination or decision and [does] not go on to the next step." 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).

### III. Discussion

In the Objections, Plaintiff argues, in pertinent part, that the Magistrate Judge erred in finding that the ALJ's step-three determination was supported by substantial evidence. (ECF No. 16 at 2–6.) For the reasons that follow, the Court disagrees with Plaintiff's position as to the ALJ's step-three determination regarding Listing 1.02(A). However, the Court agrees with Plaintiff's argument that the ALJ erred in her step-three determination that Plaintiff's impairments do not meet or equal the criteria of Listing 1.04(A).

### A.    Standard for the Step-Three Analysis

At step three of the sequential evaluation process, the ALJ "consider[s] the medical severity of [a claimant's] impairment." 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). "If [the claimant] ha[s] an impairment(s) that meets or equals one of [the] listings in appendix 1" of 20 C.F.R. Part 404, Subpart P "and meets the duration requirement, [the ALJ] will find that" the claimant is "disabled." *Id.* §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii). "At step three, the ALJ either finds that the claimant is disabled because her impairments match a listed impairment or continues the analysis." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015). "The ALJ cannot deny benefits at this step." *Id.*

"The listings set out at" 20 C.F.R. Part 404, Subpart P, Appendix 1 "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." *Sullivan v. Zebley*, 493 U.S. 521, 529–30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530.

"The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard." *Id.* at 532; *see, e.g.*, *Kiernan v. Astrue*, Civil Action No. 3:12CV459–HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) ("Necessarily, the regulations establish more stringent criteria to meet the listings than is required to meet the statutory standard for disability." (citation omitted)). *See generally Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("[T]he Social Security Amendments Act of 1954 defined 'disability' as 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .'" (second alteration in original) (quoting 42 U.S.C. § 423(d)(1)(A))). "The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Zebley*, 493 U.S. at 532 (citations omitted). "The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Id.* "That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." *Id.* (citations omitted); *see also* 20 C.F.R. § 416.925(a) (stating that, for adults, the "Listing of Impairments . . . . describes for each of the major body systems impairments that [the Secretary] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience"). *See generally Zebley*, 493 U.S. at 534–35 (noting that "the[] shortcomings of the listings are remedied at the final, vocational steps of the [sequential evaluation process]," as "[a] claimant who does not qualify for benefits under the listings . . . still has the opportunity to show that his impairment in

fact prevents him from working" (citations omitted)). Thus, "step three streamlines the [disability] decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153.

"For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Zebley*, 493 U.S. at 530. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* (citations omitted). Similarly, "[f]or a clamant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (citations omitted); *see also* 20 C.F.R. § 416.926(a) (stating that a claimant's "impairment(s) is medically equivalent to a listed impairment in appendix 1 . . . if it is at least equal in severity and duration to the criteria of any listed impairment"). As such, the burden is on the claimant to show that his impairment or combination of impairments meets or medically equals a listed impairment. *See, e.g.*, *id.* at 530; *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see also Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983) ("[T]he claimant bears the burden of proving a disability within the definition of the [Social Security] Act." (citing 42 U.S.C. § 423(d)(5))).

As is the case throughout the sequential evaluation process, the ALJ must set forth the reasons for their step-three determination. *See, e.g.*, *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." (citing *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984))); *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986) ("[T]he Secretary is required by both the Social

Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of her decision a statement of the reasons for that decision."). "[W]hen there is 'ample evidence in the record to support a determination' that the claimant's impairment meets or equals one of the listed impairments, the ALJ must identify 'the relevant listed impairments' and compare 'each of the listed criteria to the evidence of [the claimant's] symptoms.'" *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (second alteration in original) (quoting *Cook*, 783 F.2d at 1172–73); *see also Radford*, 734 F.3d at 295 (stating that the ALJ should always provide a record of "which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence," and finding that the ALJ's cursory step-three explanation was inadequate where the claimant's "medical record includes a fair amount of evidence supportive of his claim").

An ALJ's explanation for their step-three determination is insufficient if they state only that they considered the listing of impairments and "offer[] nothing to reveal *why*" they made their determination. *Fox v. Colvin*, --- F. App'x ---, 2015 WL 9204287, at *4 (4th Cir. 2015); *see, e.g.*, *Radford*, 734 F.3d at 295 (finding that remand was warranted "for further explanation by the ALJ of why [the claimant] does not meet" a listing where the ALJ "summarily concluded that [the claimant] did not meet or equal a listed impairment, but . . . provided no explanation other than writing that he 'considered, in particular,' a variety of listings . . . and not[ed] that state medical examiners had also concluded 'that no listing [was] met or equaled'"). Rather, "[t]he ALJ should . . . identif[y] the relevant listed impairments" and "then . . . compare[] each of the listed criteria to the evidence of [the claimant's] symptoms." *Cook*, 783 F.2d at 1173. "Without such an

explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id.*

  "However, if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination."[3] *Kiernan v. Astrue*, Civil Action No. 3:12CV459–HEH, 2013 WL 2323125, at *17 (E.D. Va. May 28, 2013) (citing *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011)); *see, e.g.*, *Smith*, 457 F. App'x at 328 ("Reading the ALJ's decision as a whole, substantial evidence supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting [the listing]." (citation omitted)); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment."); *Capillo v. Comm'r of Soc. Sec.*, Civil Action No. 5:15CV28, 2015 WL 6509127, at *3 (N.D. W. Va. Oct. 28, 2015) (Stamp, J.) ("[A] court need not remand a Social Security disability determination when . . . there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to [the] Step Three analysis." (second alteration in original) (citing *Schoofield v. Barnhart*, 220 F. Supp.

---

[3] A district court in this Circuit provided the following pertinent statement regarding a court's review of an ALJ's cursory step-three determination:

> When the evidence in the administrative record clearly generates an issue as to a particular listing . . . and the ALJ fails properly to identify the [listing] considered at Step Three, and to explain clearly the medical evidence of record supporting the conclusion reached at that critical stage of the analysis, a remand can be expected to result, except in those circumstances where it is clear from the record which listing or listings . . . were considered, and there is elsewhere in the ALJ's opinion an equivalent discussion of the medical evidence relevant to the Step Three analysis which allows [the court] readily to determine whether there was substantial evidence to support the ALJ's Step Three conclusion.

*Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 522 (D. Md. 2002).

2d 512, 522 (D. Md. 2002))). Indeed, "the ALJ need only review medical evidence once in his opinion." *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002). Ultimately, "[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador v. Colvin*, Civil Action No. 7:13–CV–214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015) (citing *Smith*, 457 F. App'x at 328). *See generally Capillo*, 2015 WL 6509127, at *3 ("Generally speaking, an ALJ 'is not required to use particular language or adhere to a particular format in conducting his analysis, but the decision must demonstrate that there is sufficient development of the record and explanation of findings to permit meaningful review.'" (quoting *Moore v. Astrue*, No. 2:09cv549, 2010 WL 3394657, at *6 n.12 (E.D. Va. July 27, 2010))).

**B.     Listing 1.02**

Plaintiff first argues that the ALJ provided a "legally insufficient" explanation when she determined that Plaintiff's impairments do not meet or equal the criteria under Listing 1.02. (ECF No. 16 at 6.) The Court is not persuaded by this argument.

In her decision, the ALJ considered whether Plaintiff satisfied the criteria of 1.02(A).[4] (*See* ECF No. 11-2 at 15.) Listing 1.02 provides the following, in pertinent part:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

---

[4] In his Objections, Plaintiff does not argue that the ALJ should have also considered his impairments under Listing 1.02(B). (*See* ECF No. 16.) The Court shall therefore similarly focus on Listing 1.02(A) and not address Listing 1.02(B).

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02. As used in this listing, the phrase "inability to ambulate effectively" means "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id.* § 1.00(B)(2)(b)(1). Further, "[i]neffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* "To ambulate effectively," individuals must (1) "be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living;" and (2) "have the ability to travel without companion assistance to and from a place of employment or school." *Id.* § 1.00(B)(2)(b)(2). The regulations provide that non-exhaustive "examples of ineffective ambulation" include the inability to (1) "walk without the use of a walker, two crutches or two canes;" (2) "walk a block at a reasonable pace on rough or uneven surfaces;" (3) "use standard public transportation;" (4) "carry out routine ambulatory activities, such as shopping and banking;" and (5) "climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* Finally, "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.*

At step three of the sequential evaluation process, the ALJ stated that "[t]he listing of impairments found in 20 CFR have been reviewed," including "Listing[] 1.02." (ECF No. 11-2 at 15.) The ALJ then stated only the following as to whether Plaintiff's impairments meet or equal the criteria in this listing:

> Upon review of the entire record, the undersigned finds no evidence of gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint, resulting in an inability to ambulate effectively, which would be required to satisfy the listing 1.02.

(*Id.*)

While the ALJ did not elaborate on this determination in the section of her opinion addressing step three of the sequential evaluation process, (*see id.* at 15), this step-three conclusion is nonetheless supported by substantial evidence discussed in other sections of the ALJ's decision. In particular, the ALJ subsequently discussed the evidence potentially implicating Listing 1.02, such as (1) the May 6, 2014 diagnosis of a "complete tear of right ACL and internal derangement of the right medial meniscus," (*id.* at 18); (2) the February 21, 2014 "MRI of [Plaintiff's] right knee," which "revealed a chronic tear of the ACL, tiny joint effusion, large tear of the medial meniscus, and mild-to-moderate degenerative osteoarthritis," (*id.*); (3) Plaintiff's statement on January 15, 2014 that he had "difficulty climbing stairs, kneeling, squatting and walking" and his report of "persistent symptoms of clicking, grinding, and intermittent swelling," (*id.*); (4) Plaintiff's February 26, 2013 report of "significant symptoms of popping and cracking in his right knee," (*id.*); (5) Plaintiff's testimony during the administrative hearing that "he has difficulty standing and that he has fallen down multiple times," (*id.* at 16); (6) the April 17, 2013 evaluation results that Plaintiff had "limited range of motion in joints," (*id.* at 17; *cf. id.* at 19 (providing the ALJ's statement in her decision that, "[f]ollowing the consultative examination on February 26, 2013," Dr. Sushil Sethi "found normal range of motion in the claimant's knees")); and (7) Plaintiff's repeated statements that he experienced pain and weakness in his knees, (*see id.* at 16–19).

However, the ALJ also noted that Plaintiff's "activities of daily living are not compromised to the extent one would expect given his alleged symptoms and limitations." (*Id.* at 19.) In particular, the ALJ noted that Plaintiff "testified that a friend made him a cane, but that he only used it on a few occasions" and Plaintiff "lives independently with his 14-year-old son and testified that he cares for his son, prepares meals, performs some household chores, and also attends some of his son's activities." (*Id.*) Thus, the Court need not look beyond the ALJ's opinion to find substantial evidence supporting the ALJ's step-three determination that Plaintiff did not demonstrate an inability to ambulate effectively, as required by the criteria for Listing 1.02(A). *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.02(A) (providing, in pertinent part, that Listing 1.02(A) requires the "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b"). *See generally id.* § 1.00(B)(2)(b)(1) ("Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."). The Court finds that the ALJ included adequate substantial evidence in her decision supporting her step-three determination as to Listing 1.02(A).

Plaintiff nonetheless argues that the ALJ should have "discuss[ed] her step three finding that [Plaintiff's] impairments did not meet or equal Listing [1.02(A)]." (ECF No. 16 at 5.) However, the ALJ need not fully discuss her step-three determination in the section of her decision related to this analysis. Indeed, "[a] cursory explanation in step three is satisfactory so long as the decision as a whole demonstrates that the ALJ considered the relevant evidence of record and there is substantial evidence to support the conclusion." *Meador v. Colvin*, Civil Action No. 7:13–CV–

13

214, 2015 WL 1477894, at *3 (W.D. Va. Mar. 27, 2015). In this case, the ALJ addressed Listing 1.02(A) at step three, provided specific reasons Plaintiff's impairments did not meet or equal the requirements of Listing 1.02(A), and discussed the requisite substantial evidence supporting that determination in the remainder of her decision. These pertinent discussions in the ALJ's opinion are all that is required for the Court to uphold the ALJ's step-three determination regarding Listing 1.02(A). *Cf. Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) ("Reading the ALJ's decision as a whole, substantial evidence supports the finding at step three of the sequential evaluation process as the ALJ's analysis at subsequent steps of the evaluation are inconsistent with meeting [the listing]." (citation omitted)). As such, the Court finds that Plaintiff's argument as to Listing 1.02 is unavailing.

Accordingly, the Court **OVERRULES** the Objections to the extent that Plaintiff argues that the ALJ erred in her step-three determination that Plaintiff's impairments do not meet or equal the criteria of Listing 1.02(A).

## C.    Listing 1.04

Plaintiff similarly argues that "the ALJ's rationale for her step three finding" as to Listing 1.04(A) "was legally insufficient."[5] (ECF No. 16 at 6.) The Court agrees with this argument to the extent that Plaintiff asserts that the ALJ erred in her step-three determination as to Listing 1.04(A).

---

[5] In her decision, the ALJ addressed Listing 1.04 and found that Plaintiff's impairments do not meet or equal the requirements of subparts (A) through (C) of this listing. (*See* ECF No. 11-2 at 15.) In her briefing and Objections, Plaintiff argues only that the ALJ erred in her analysis as to Listing 1.04(A) and does not argue that the ALJ's decision was incorrect as to subparts (B) or (C) of that listing. (*See* ECF No. 12 at 5–8; ECF No. 16 at 5; *see also* ECF No. 13 at 16 (providing Defendant's statement in his briefing that "the only 1.04 Listing Plaintiff alleges that he met" is "Listing 1.04A").) The Court shall therefore only address Plaintiff's arguments as to Listing 1.04(A) and forego an analysis of the ALJ's decision as to Listing 1.04(B) and (C). *Cf. Lehman v. Astrue*, 931 F. Supp. 2d 682, 689 (D. Md. 2013) (stating that, "[t]o meet listing 1.04, a claimant must first demonstrate that they are suffering from a disorder of the spine resulting in the compromise of either . . . the nerve root or . . . the spinal cord," then "he must show" that he meets all of the listed elements of one of subsection (A), (B), or (C)).

Listing 1.04 provides the following, in relevant part:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04. The Fourth Circuit has held "that Listing 1.04A requires a claimant to show only . . . that each of the symptoms are present, and that the claimant has suffered or can be expected to suffer from nerve root compression continuously for at least 12 months." *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013) (citing 20 C.F.R. § 404.1509). "A claimant need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition." *Id.* "Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity." *Id.* Rather, "a claimant may . . . prove a chronic condition by showing that he experienced the symptoms over a period of time, as evidenced by a record of ongoing management and evaluation." *Id.* (citation omitted).

The ALJ considered subparts (A) through (C) of Listing 1.04 at step three of the sequential evaluation process. (*See* ECF No. 11-2 at 15.) As to Listing 1.04(A), the ALJ stated only the following regarding whether Plaintiff's impairments meet or equal the criteria for this listing: "The undersigned finds no evidence of nerve root compression . . . , which would be required to satisfy the [L]isting 1.04." (*Id.*) As with her determination regarding Listing 1.02(A), the ALJ did not elaborate on her Listing 1.04(A) finding at step three of the sequential evaluation process. (*See id.*)

15

However, unlike the ALJ's determination regarding Listing 1.02(A), the ALJ failed to provide any evidence or discussion in the remainder of her opinion supporting her determination that there was "no evidence of nerve root compression." (*See id.* at 12–21.) To the contrary, the ALJ only discussed evidence indicating that Plaintiff *does* exhibit signs of nerve root compression, such as (1) October 8, 2013 test results that Plaintiff "had decreased range of motion in his lumbar spine and positive straight leg raising on the left," (*id.* at 17; *see also id.* at 18 (noting that in a February 26, 2013 evaluation, Dr. Sushil Sethi found that Plaintiff "had tenderness of his lumbar spine as well as decreased range of motion")); and (2) Plaintiff's numerous diagnoses of pain in the lower back combined with an October 25, 2007 magnetic resonance imaging scan of the claimant's lumbar spine that revealed "some nerve root compromise," (*id.* at 17). *See generally* 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04(A) (providing the required evidence of nerve root compression, including, in large part, "neuro-anatomic distribution of pain, limitation of motion of the spine, . . . and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)"); *Cates v. Colvin*, No. 12–CV–111–TLW, 2013 WL 5326516, at *5 (N.D. Okla. Sept. 20, 2013) ("'Neuro-anatomic distribution of pain' is generally defined as complaints of pain directly generated by the compromised nerve."); *Astolos v. Astrue*, No. 06–CV–678, 2009 WL 3333234, at *2 n.7 (W.D.N.Y. Oct. 14, 2009) ("The lumbar spine is made up of 5 vertebrae which comprise the lower back."). The ALJ provides no explanation in her decision as to why she found "no evidence of nerve root compression" when her own decision provided these indications of nerve root compression. (*See* ECF No. 11-2 at 12–21.)

The ALJ's contradictory and unsupported determination as to Listing 1.04(A) leaves the Court to guess as to how the ALJ reached her determination for this listing. "Th[is] deficienc[y]

completely frustrate[s] the Court's ability to perform a meaningful review of the ALJ's determination regarding" Listing 1.04(A) "and, as such, constitute[s] clear error." *Swafford v. Colvin*, Civil Action No. 2:14–cv–14511, 2015 WL 5725825, at \*6 (S.D. W. Va. Sept. 30, 2015) (citations omitted); *see, e.g.*, *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) ("[R]emand may be appropriate . . . where . . . inadequacies in the ALJ's analysis frustrate meaningful review." (citation omitted)); *Radford*, 734 F.3d at 295 ("If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))). The Court thus finds that the ALJ erred at step three of the sequential evaluation process by finding that Plaintiff's impairments do not meet or equal the criteria of Listing 1.04(A), but failing to provide support for this finding in the remainder of her decision. *Cf. Kiernan v. Astrue*, Civil Action No. 3:12CV459–HEH, 2013 WL 2323125, at \*17 (E.D. Va. May 28, 2013) ("However, if the ALJ's opinion read as a whole provides substantial evidence to support the ALJ's decision at step three, such evidence may provide a basis for upholding the ALJ's determination.").

Defendant argues that, regardless of whether the ALJ committed error at step three of the sequential evaluation process, the Court should affirm the decision of the Commissioner because that error was harmless. (*See* ECF No. 17 at 3–4.) However, to find that the ALJ's error was harmless and affirm the decision of the Commissioner, the Court would be required to parse through the record, identify an alternative rationale—which was not provided by the ALJ—for why Plaintiff's impairments do not meet or equal the criteria of Listing 1.04(A), then supplant the ALJ's defective rationale with this valid alternative theory. The Fourth Circuit has expressly stated

17

that such fact-finding missions are inappropriate in the step-three analysis where the ALJ failed to conduct the proper analysis in the first instance. *See Fox v. Colvin*, No. 14–2237, 2015 WL 9204287, at *4 (4th Cir. Dec. 17, 2015) (stating that the district court and the magistrate judge erred where they "both . . . recogni[zed] . . . the ALJ's [step-three] error," but nonetheless "engaged in an analysis that the ALJ should have done in the first instance"); *see also id.* at *5 ("Our circuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Radford*, 734 F.3d at 296 ("[I]t is not [courts'] province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ] . . . .'" (quoting *Hancock v. Astrue*, 667 F.3d 470, 296 (4th Cir. 2012))); *cf. Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) ("[A] simple but fundamental rule of administrative law . . . is . . . that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." (citation omitted)). *See generally Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974) ("While [a court] may not supply a reasoned basis for the agency's action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." (citations omitted)). The Court therefore declines Defendant's invitation to engage in a fact-finding venture to replace the ALJ's defective rationale with an alternative theory. Instead, the Court finds that remand is warranted so the ALJ can conduct the proper inquiry in the first instance. *See, e.g.*, *Lehman v. Astrue*, 931 F. Supp. 2d 682, 691 (D. Md. 2013) (remanding the case where, in part, the ALJ summarily and incorrectly stated that "the record contains no findings" as to requirements of Listing 1.04).

In summary, the Court finds that the ALJ erred in her step-three determination regarding Listing 1.04(A). The Court further finds that remand for further proceedings consistent with this Opinion is warranted. Accordingly, the Court **SUSTAINS** the Objections to the extent that Plaintiff requests that the Court remand this case.[6]

## IV. Conclusion

For the reasons provided herein, the Court **SUSTAINS IN PART** the Objections, (ECF No. 16), **DECLINES TO ADOPT** the PF&R, (ECF No. 15), **GRANTS** Plaintiff's Motion, (ECF No. 12), insofar as Plaintiff requests remand of this case, **DENIES** Defendant's Motion, (ECF No. 13), **REVERSES** the final decision of the Commissioner, **REMANDS** this case for further proceedings pursuant to 42 U.S.C. § 405(g), and **DISMISSES** this action from the Court's docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:        March 31, 2016

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

---

[6] In the Objections, Plaintiff also argues that the ALJ improperly evaluated Plaintiff's credibility in the analysis pertaining to Plaintiff's residual functional capacity. (*See* ECF No. 16 at 6–7.) As the Court finds that remand is warranted based on the ALJ's defective step-three determination for Listing 1.04(A), it does not reach Plaintiff's additional argument regarding the ALJ's credibility determination.